UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X
                                     :
 SECURITIES AND EXCHANGE COMMISSION,  :
                                     :
                          Plaintiff,  :        22cv4736 (DLC)
                                     :
              -v-                     :        OPINION AND ORDER
                                     :
 KAREN ROSENBERGER and JOANNA LANNI,  :
                                     :
                         Defendants.  :
                                     :
------------------------------------ X

APPEARANCES:

For plaintiff Securities and Exchange Commission:
Richard G. Primoff
Lindsay Senechal Moilanen
Theresa Hsin-Yi Gue
U.S. Securities and Exchange Commission
100 Pearl Street
Suite 20-100
New York, NY 10004-2616

For defendant Karen Rosenberger:
Jenny Rebecca Kramer
Rachel Finkel
Steven Campbell
Alston & Bird, LLP
90 Park Avenue
New York, NY 10016

Paul Monnin
Alston & Bird, LLP
1201 West Peachtree Street
Atlanta, GA 30309

For defendant Joanna Lanni:
Scott Bonner McBride
Michelle Lea Goldman
Amanda Kate Cipriano
Lowenstein Sandler
One Lowenstein Drive
Roseland, NJ 07068

DENISE COTE, District Judge:

This action arises out of certain accounting decisions reflected in financial reports filed with the Securities and Exchange Commission (the "SEC") by Synchronoss Technologies, Inc. ("Synchronoss").  Synchronoss allegedly overstated the company's revenue in various quarters by several million dollars.  The SEC brings claims against Karen Rosenberger, Synchronoss's former Chief Financial Officer ("CFO"), and Joanna Lanni, Synchronoss's former Controller.

Rosenberger and Lanni have both moved to dismiss the claims against them.  In connection with their motions to dismiss, the defendants each submitted several exhibits.  The SEC has moved to strike four of the exhibits submitted in connection with Rosenberger's motion to dismiss.  For the following reasons, the SEC's motion to strike the exhibits is granted.  Rosenberger's and Lanni's motions to dismiss are denied.

## Background

The following facts are taken from the Complaint and other materials properly considered at this stage.  For the purposes of this motion, the plaintiff's factual allegations are taken as true, and all reasonable inferences are drawn in the plaintiff's favor.

Synchronoss is a software and services company whose customers are generally telecommunications companies.  According to the SEC, Synchronoss improperly recorded revenue in violation of generally accepted accounting principles ("GAAP") for five transactions from September 2015 to June 2017.

The first two transactions involved Synchronoss's attempts to sell its ASR Software and its LNP Software to AT&T, Inc. ("AT&T") in 2015.[1]  Although Synchronoss recognized revenue in the third quarter of 2015 on a sale of the ASR Software to AT&T, AT&T never committed to purchase the software and instead agreed only to participate in a trial of the software.  Similarly, although Synchronoss recognized revenue in the fourth quarter of 2015 on a sale of the LNP Software to AT&T, AT&T did not purchase the LNP Software in 2015.  Revenue recognition for the LNP Software transaction was based on a purported agreement that was improperly backdated to December 31, 2015 even though the sale had not closed by that date.  According to the Complaint, the circumstances indicated that there was not persuasive evidence of agreements for AT&T to purchase the ASR or LNP Software, which made revenue recognition on these transactions

---

[1] The ASR Software was designed to help Synchronoss's customers respond to access service requests by or to other phone carriers.  The LNP Software allowed retail customers to keep their personal phone numbers when switching carriers.

improper under GAAP rules.  Rosenberger allegedly knew or
recklessly disregarded that recognizing revenue on these
transactions was improper, but nonetheless directed Synchronoss
to do so.

The third transaction involved Synchronoss's acquisition of
Openwave Messaging, Inc. ("Openwave").  Synchronoss acquired
Openwave for $120 million in March 2016.  On the same day as the
acquisition, Synchronoss also entered into a $10 million license
agreement to settle patent claims it asserted against Openwave.
As Rosenberger allegedly knew or recklessly disregarded, the
license agreement was negotiated simultaneously with the
acquisition and was a prerequisite for Synchronoss to acquire
Openwave for the $120 million price.  Thus, under the applicable
GAAP rules, the license agreement should have been accounted for
as a downward adjustment to the acquisition price.  Rather than
accounting for the agreement as a downward adjustment, however,
Synchronoss, at Rosenberger's direction, improperly recognized
$10 million in revenue on the license agreement.

The fourth transaction involved Synchronoss's retooling of
a preexisting agreement with one of its customers, Windstream
Communications, Inc. ("Windstream"), in 2016.  In this
transaction, Synchronoss and Windstream broke up a software-as-
a-service agreement into multiple agreements including a

perpetual license agreement ("PLA"), an audit services
agreement, and agreements for hosting, maintenance, and other
services.  Rosenberger and Lanni allegedly knew or recklessly
disregarded the multiple-element structure of the deal.  Under
the relevant GAAP rule, revenue recognition on such a multiple
element arrangement ("MEA") would have been appropriate only if
there were vendor specific objective evidence ("VSOE") of fair
value for the undelivered elements.  Synchronoss, however,
lacked VSOE of fair value for at least the audit services.
Nonetheless, at Rosenberger's direction, Synchronoss recognized
revenue on the PLA for the second quarter of 2016.  To support
this recognition, Rosenberger and Lanni each approved and signed
a revenue recognition memorandum to Synchronoss's auditor that
failed to disclose certain circumstances of the PLA's
negotiation, including that it was negotiated as part of an MEA
involving agreements for audit and other services.

Finally, the fifth transaction at issue is Synchronoss's
purported sale of a software license to one of its
subcontractors, Sage Management, Inc. ("Sage"), on the
assumption that Sage would resell the license to one of
Synchronoss's customers.  Under GAAP rules, revenue recognition
allegedly would have been appropriate for this reseller
arrangement only if collection was probable and the fee for the

arrangement was fixed or determinable.  But Sage repeatedly indicated to Synchronoss that it had concerns about its ability to pay Synchronoss for the license and that the success of the transaction would depend significantly on whether Sage successfully resold the license.  According to the Complaint, these and other considerations should have suggested that the fee was not fixed or determinable.  Nonetheless, at Rosenberger's direction, Synchronoss recognized revenue on the purported sale of the license to Sage.

By recognizing revenue on these five transactions, Synchronoss overstated its revenue for several quarters of 2015 and 2016 in its filings with the SEC, including several Forms 10-K and 10-Q.  These overstatements allowed Synchronoss to meet or exceed analysts' expectations when, without the improperly recognized revenue, Synchronoss would have fallen behind. Rosenberger signed and certified the Forms 10-K and 10-Q at issue.

Additionally, during the relevant time, Rosenberger and Lanni allegedly attempted to obscure the impropriety of the revenue recognition from Synchronoss's auditor.  In several written and oral communications with the auditor, Rosenberger made misrepresentations and failed to disclose details that would have allowed the auditor to understand fully the

appropriateness of the revenue recognition decisions.
Similarly, in a memorandum to the auditor, Lanni omitted facts
important to a review of the Windstream transaction.

In July 2018, Synchronoss announced a restatement of
certain financial statements for fiscal years 2015 and 2016, and
also restated certain financial data for 2014 and 2013.  In its
announcement, Synchronoss acknowledged that there were
"pervasive material weaknesses" in the internal control systems
for financial reporting that had existed during the relevant
times.

From 2015 to April 1, 2017, Rosenberger, as CFO, had
primary responsibility for the adoption and implementation of
Synchronoss's internal controls over financial reporting.  As
part of Synchronoss's internal accounting guidelines, for all
transactions entered into in excess of $500,000, the accounting
team prepared a revenue recognition memorandum like those
detailed above.  Rosenberger reviewed and approved all these
memoranda.  But, as explained above, several of the memoranda
failed to include certain relevant information.

This action was filed on June 7, 2022.  It was reassigned
to this Court on August 17.  Rosenberger filed her motion to
dismiss on September 22, 2022, and Lanni filed hers shortly
thereafter.  On October 28, in connection with its opposition to

the defendants' motions to dismiss, the SEC filed its motion to strike four of Rosenberger's exhibits.  The motions to dismiss were fully submitted on November 18, and the motion to strike was fully submitted on November 30.  Discovery is ongoing.

## Discussion

To survive a motion to dismiss for failure to state a claim, the complaint "must plead enough facts to state a claim to relief that is plausible on its face."  Green v. Dep't of Educ. of City of New York, 16 F.4th 1070, 1076–77 (2d Cir. 2021) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Charles v. Orange Cnty., 925 F.3d 73, 81 (2d Cir. 2019) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "In determining if a claim is sufficiently plausible to withstand dismissal," a court "accept[s] all factual allegations as true" and "draw[s] all reasonable inferences in favor of the plaintiffs."  Melendez v. City of New York, 16 F.4th 992, 1010 (2d Cir. 2021) (citation omitted).  Nevertheless, a court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations."  Hamilton v.

8

Westchester Cnty., 3 F.4th 86, 91 (2d Cir. 2021) (citation
omitted).

Under Rule 9(b), parties alleging fraud must "state with
particularity the circumstances constituting fraud."  Fed. R.
Civ. P. 9(b).  To satisfy Rule 9(b)'s pleading standard for
securities actions based on allegedly fraudulent statements, a
complaint must "(1) specify the statements that the plaintiff
contends were fraudulent, (2) identify the speaker, (3) state
where and when the statements were made, and (4) explain why the
statements were fraudulent."  Employees' Ret. Sys. of Gov't of
the Virgin Islands v. Blanford, 794 F.3d 297, 305 (2d Cir.
2015) (citation omitted).  "Malice, intent, knowledge, and other
conditions of a person's mind," however, "may be alleged
generally."  Fed. R. Civ. P. 9(b).

I.   Rosenberger

The Complaint asserts nine claims against Rosenberger based
on various violations of the securities laws in connection with
the five transactions detailed above.  Rosenberger moves to
dismiss each claim against her.  Additionally, the SEC moves to
strike four documents relied on by Rosenberger in her motion to
dismiss.  For the following reasons, the SEC's motion to strike
is granted, and Rosenberger's motion to dismiss is denied.

A.   Motion to Strike

The SEC's motion to strike four documents attached to Rosenberger's motion is addressed first.  In securities fraud actions, a court deciding a motion to dismiss may "consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff upon which it relied in bringing the suit."  Tongue v. Sanofi, 816 F.3d 199, 209 (2d Cir. 2016) (citation omitted).  Additionally, even where a document is not incorporated by reference, "the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint."  United States ex rel. Foreman v. AECOM, 19 F.4th 85, 106 (2d Cir. 2021) (citation omitted).

Here, the SEC challenges four documents offered by Rosenberger.  Two of these documents are internal accounting memoranda generated by Synchronoss in June 2018 shortly before Synchronoss restated its revenue.  The other documents are emails that are relevant to Synchronoss's communications with its auditor, but that are not quoted, referenced, or cited in the Complaint.  The SEC's motion to strike the four documents is

granted.  None of the four documents is appropriately considered
on a motion to dismiss.

     B.   Section 10(b) and Rule 10b-5

     Having determined the universe of materials that may
appropriately be considered, each of the claims against
Rosenberger is now addressed.  First, the Complaint alleges that
Rosenberger violated § 10(b) of the Securities Exchange Act of
1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and SEC Rule 10b-5,
17 C.F.R. § 240.10b-5, based on her conduct with respect to the
ASR and LNP Software transactions and the Openwave transaction.
The motion to dismiss the § 10(b) and Rule 10b-5 claims is
denied.

          1.   Legal Standards

     Section 10(b) and Rule 10b-5 thereunder prohibit
manipulative practices in connection with the purchase and sale
of securities.  Section 10(b) makes it unlawful to "use or
employ, in connection with the purchase or sale of any
security . . . any manipulative or deceptive device or
contrivance in contravention of" SEC rules.  15 U.S.C. § 78j(b).
Rule 10b-5, in turn, provides:

          It shall be unlawful for any person, directly or
          indirectly, by the use of any means or instrumentality
          of interstate commerce, or of the mails or of any
          facility of any national securities exchange,

(a) To employ any <u>device, scheme, or artifice to defraud</u>,

(b) To <u>make any untrue statement of a material fact</u> or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any <u>act, practice, or course of business which operates or would operate as a fraud or deceit</u> upon any person,

in connection with the purchase or sale of any security. 17 C.F.R. § 240.10b-5 (emphasis added).  Section 10(b) and Rule 10b-5 "are violated if a person has (1) made a material misrepresentation or a material omission as to which he had a duty to speak, or used a fraudulent device; (2) with scienter; (3) in connection with the purchase or sale of securities." <u>SEC v. Sourlis</u>, 851 F.3d 139, 144 (2d Cir. 2016) (citation omitted).

A misstatement is material if, "in the view of a reasonable investor," it "significantly alter[s] the total mix of information made available." <u>Plumber & Steamfitters Local 773 Pension Fund v. Danske Bank A/S</u>, 11 F.4th 90, 100-01 (2d Cir. 2021) (citation omitted).  Similarly, an omission is material if the omitted fact would have been viewed by the reasonable investor "as having significantly altered the total mix of information made available." <u>Altimeo Asset Mgmt. v. Qihoo 260 Tech. Co. Ltd.</u>, 19 F.4th 145, 151 (2d Cir. 2021) (citation omitted).

12

Defendants may be liable under Rule 10b-5(b) for misleading statements of opinion.  To adequately plead a misleading statement of opinion, the plaintiff must

> identify particular (and material) facts going to the basis for the [speaker's] opinion -- facts about the inquiry the [speaker] did or did not conduct or the knowledge it did or did not have -- whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context.

Tongue, 816 F.3d at 209 (quoting Omnicare, Inc. v. Laborers Dist. Council Constr. Ind. Pension Fund, 575 U.S. 175, 194 (2015)).  In bringing a claim for a misleading statement of opinion, the plaintiff must show (1) "that a statement of opinion contained one or more embedded factual statements that can be proven false," or (2) "that a statement of opinion, without providing critical context, implied facts that can be proven false."  Abramson v. Newlink Genetics Corp., 965 F.3d 165, 175 (2d Cir. 2020).  A statement of opinion is not necessarily misleading, however, simply because the speaker "knows, but fails to disclose, some fact cutting the other way." Tongue, 816 F.3d at 210 (citation omitted).

Under Rule 10b-5(b), "only the 'maker' of a misstatement, i.e., the person with ultimate authority over the statement, can have primary liability."  SEC v. Rio Tinto plc, 41 F.4th 47, 49 (2d Cir. 2022) (citing Janus Cap. Grp., Inc. v. First Derivative

<u>Traders</u>, 564 U.S. 135, 142 (2011)).  "A defendant does not 'make' a statement simply by preparing or publishing it on behalf of another."  <u>In re Pfizer Inc. Sec. Litig.</u>, 819 F.3d 642, 656 (2d Cir. 2016) (citation omitted).  Thus, in <u>Janus</u>, the Supreme Court held that "a mutual fund investment advisor who was significantly involved in preparing a client's prospectuses did not make the statements contained therein."  <u>Id.</u> (citing <u>Janus</u>, 564 U.S. at 146-48).  In most cases, "attribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by -- and only by -- the party to whom it is attributed."  <u>Janus</u>, 564 U.S. at 142-43.

Liability for securities fraud under Rule 10b-5 also requires proof of scienter, which the Supreme Court has defined as an "intent to deceive, manipulate or defraud" or "knowing or intentional misconduct."  <u>Ernst & Ernst v. Hochfelder</u>, 425 U.S. 185, 194 n.12, 197 (1976).  The requisite scienter "may be established through a showing of reckless disregard for the truth, that is, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care."  <u>Sourlis</u>, 851 F.3d at 144 (citation omitted).  Mere negligence, however, is insufficient.  <u>SEC v. Obus</u>, 693 F.3d 276, 286 (2d Cir. 2012).  Proof of scienter "need not be direct, but may be a matter of inference from circumstantial evidence."

14

_Valicenti Advisory Servs., Inc. v. SEC_, 198 F.3d 62, 65 (2d Cir. 1999) (citation omitted).

The allegations in the Complaint are sufficient to state a claim under § 10(b) and Rule 10b-5 against Rosenberger in connection with the two AT&T and the Openwave transactions.  For each of these transactions, Rosenberger signed Forms 10-K for Synchronoss stating its financials.  She also signed certifications attached to Synchronoss's Forms 10-Q and 10-K that stated, _inter alia_, that, "[b]ased on [Rosenberger's] knowledge," the relevant financial statements "fairly presented, in all material respects, the financial condition and results of operations of" Synchronoss.  The Complaint plausibly alleges that, even though Rosenberger signed and certified the fairness of these filings, she knew they materially overstated Synchronoss's revenue by improperly recognizing revenue for the transactions.

Rosenberger's arguments to the contrary fail.  Rosenberger first argues that she is not the "maker" of any statements in the Forms 10-K despite being a signatory.[2]  But courts have repeatedly rejected arguments like this in the past.  _See, e.g._, _In re Smith Barney Transfer Agent Litig._, 884 F. Supp. 2d 152,

---

[2] Rosenberger disputes whether she signed other filings that do not serve as the basis of the SEC's claims.  Rosenberger signed the filings that make up the substance of the claims.

163-64 (S.D.N.Y. 2012) (collecting cases).[3]  Further, Rosenberger concedes that she "made" the statements in the Form 10-Q certifications.  The statements in these certifications are independently sufficient to support the § 10(b) and Rule 10b-5 claim against her.

Rosenberger argues that the certifications are statements of opinion.  But even if they are, statements of opinion may be actionable under Rule 10b-5(b), as explained above.  Here, by certifying that Synchronoss's financial statements fairly presented the financial condition of the company, Rosenberger implied to a reasonable investor that the financial statements had been properly vetted, when in fact they had not.  As a result, Rosenberger's statements in the certifications are sufficient to support liability under Rule 10b-5(b).[4]

Rosenberger also argues that the Complaint does not adequately allege scienter, but this argument fails. Rosenberger chiefly argues that she did not have sufficient

---

[3] Rosenberger points to the Second Circuit's opinion in Rio Tinto as support for her view that she did not "make" the statements in the Forms 10-K.  But Rio Tinto addressed only "whether misstatements and omissions -- without more -- can support scheme liability" under Rules 10b-5(a) and (c).  41 F.4th at 53.

[4] Because the SEC has adequately pled a "maker" theory of liability under Rule 10b-5(b), it is unnecessary at this stage to determine if the allegations against Rosenberger also support a "scheme" theory under Rules 10b-5(a) and (c).

16

information when several of the relevant filings were prepared
to know that revenue recognition was improper.  But, contrary to
Rosenberger's assertions, the Complaint recites an abundance of
factual detail to plead a strong inference of scienter with
respect to Rosenberger's wrongful conduct in both the AT&T and
Openwave transactions.

> 2.   Rule 13b2-2

The SEC next brings a claim against Rosenberger under Rule
13b2-2 based on all five transactions.  Rosenberger's motion to
dismiss the SEC's claims under Rule 13b2-2 is denied.

Rule 13b2-2 provides in pertinent part:

> No director or officer of an issuer shall, directly or
> indirectly . . . [m]ake or cause to be made a
> materially false or misleading statement to an
> accountant in connection with . . . [a]ny audit,
> review or examination of the financial statements of
> the issuer required to be made pursuant to this
> subpart.

17 C.F.R. § 240.13b2-2.  Rule 13b2-2 claims do not require a
showing of scienter.  See, e.g., SEC v. DiMaria, 207 F. Supp. 3d
343, 361 (S.D.N.Y. 2016); SEC v. Kelly, 765 F. Supp. 2d 301, 324
(S.D.N.Y. 2011).

The Complaint states a Rule 13b2-2 violation.  It asserts
that Rosenberger repeatedly made false or misleading statements
to Synchronoss's auditor through, for example, revenue
recognition memoranda and management representation letters.

Rosenberger argues that the SEC fails to identify any specific misstatements or omissions made to the auditor. This is incorrect. The Complaint identifies a number of specific omissions in Rosenberger's communications with the auditor, as well as a number of allegedly false statements.

> 3. Section 13(a) and Rule 13a-14

Next, the SEC brings claims under § 13(a) of the Exchange Act and Rule 13a-14 based on Rosenberger's conduct in all five transactions. The motion to dismiss the § 13(a) and Rule 13a-14 claims is denied.

Section 13(a) provides in relevant part that issuers of securities

> shall file with the Commission, in accordance with such rules and regulations as the Commission may prescribe . . . such annual reports . . . , certified if required by the rules and regulations of the Commission by independent public accountants, and such quarterly reports . . . as the Commission may prescribe.

15 U.S.C. § 78m(a). Rule 13a-14, in turn, states in relevant part that

> [e]ach report, including transition reports, filed on Form 10-Q, Form 10-K, Form 20-F or Form 40-F . . . under Section 13(a) . . . must include certifications in the form specified in the applicable exhibit filing requirements of such report and such certifications must be filed as an exhibit to such report. Each principal executive and principal financial officer of the issuer, or persons performing similar functions, at the time of the filing of the report must sign a certification.

17 C.F.R. § 240.13a-14 (emphases added).

Thus, § 13(a) and Rule 13a-14 require principal financial officers to execute certifications for certain public filings, including Form 10-Q and Form 10-K filings.  These certifications require an officer to certify, inter alia, that the officer has reviewed the report, and that "based on the officer's knowledge," the report "does not contain any" material misstatement or omission and "fairly present[s] in all material respects the financial conditions and results of operations" of the company.  15 U.S.C. § 7241(a).

The Complaint explains that Rosenberger signed certifications accompanying several of Synchronoss's filings. Contrary to Rosenberger's certifications, many of these filings omitted material facts and did not fairly present Synchronoss's financial condition.  As a result, the SEC has stated a claim under § 13(a) and Rule 13a-14.

Rosenberger again argues that the SEC has not alleged that she knew at the time of the filings that her certifications were false.  For the reasons identified above with respect to the § 10(b) and Rule 10b-5 claims, the Complaint contains sufficient factual detail to satisfy such a requirement.

        4.   Section 13(b)(5)

The SEC brings a claim against Rosenberger under § 13(b)(5) of the Exchange Act.  Rosenberger's motion to dismiss the § 13(b)(5) claim is denied.

Section 13(b)(5) provides that "[n]o person shall knowingly circumvent or knowingly fail to implement a system of internal accounting controls or knowingly falsify any book, record, or account" required by other provisions of the Exchange Act.  15 U.S.C. § 78m(b)(5).  Under the plain language of the provision, to establish a claim under § 13(b)(5) the SEC must show that defendants acted with knowledge.  See, e.g., Kelly, 765 F. Supp. 2d at 323; SEC v. Standard, No. 06 Civ. 7736 (GEL), 2009 WL 196023, at *30 (S.D.N.Y. Jan. 27, 2009).

The Complaint states a claim against Rosenberger under § 13(b)(5).  Rosenberger approved several financial statements for Synchronoss that falsely stated Synchronoss's revenue. Additionally, Rosenberger approved and signed other allegedly false communications, such as revenue recognition memoranda and management representation letters.  Further, there are sufficient allegations to plead that it is plausible that she did so knowing that revenue recognition in many instances was inappropriate.

Rosenberger's arguments to the contrary largely echo her arguments for the SEC's other claims.  For the reasons explained above, those arguments fail.

>    5.    Rule 13b2-1

The SEC also brings a claim against Rosenberger under Rule 13b2-1.  Rosenberger's motion to dismiss the 13b2-1 claim is denied.

Rule 13b2-1 provides that "[n]o person shall directly or indirectly, falsify or cause to be falsified, any book, record or account subject to section 13(b)(2)(A)" of the Exchange Act. 17 C.F.R. § 240.13b2-1.  Scienter is not an element for a cause of action under Rule 13b2-1.  <u>SEC v. McNulty</u>, 137 F.3d 732, 740-41 (2d Cir. 1998); <u>see also</u> <u>Kelly</u>, 765 F. Supp. 2d at 322; <u>Standard</u>, 2009 WL 196023, at *29.  For largely the same reasons that the SEC states a claim against Rosenberger under § 13(a), the SEC also states a claim against her under Rule 13b2-1.

>    6.    Section 20(e)

The SEC brings three claims against Rosenberger for aiding and abetting primary violations by Synchronoss.  Section 20(e) of the Exchange Act establishes liability for those who aid and abet others in securities violations.  15 U.S.C. § 78t(e). Section 20(e) provides:

> any person that knowingly or recklessly provides
> substantial assistance to another person in violation

of a provision of this chapter, or of any rule or
regulation issued under this chapter, shall be deemed
to be in violation of such provision to the same
extent as the person to whom such assistance is
provided.

Id.

To make out a claim for aiding and abetting liability, the

SEC must show:

(1) the existence of a securities law violation by the
primary (as opposed to the aiding and abetting) party;
(2) knowledge of this violation on the part of the
aider and abettor; and (3) substantial assistance by
the aider and abettor in the achievement of the
primary violation.

Gonnella v. SEC, 954 F.3d 536, 550 (2d Cir. 2020) (citation

omitted).  Substantial assistance requires that the aider and

abettor "in some sort associated [her]self with the venture,

that [s]he participated in it as in something that [s]he wished

to bring about, and that [s]he sought by [her] action to make it

succeed."  SEC v. Apuzzo, 689 F.3d 204, 206 (2d Cir. 2012)

(citation omitted).

The Complaint includes three causes of action against

Rosenberger for aiding and abetting Synchronoss's primary

violation.  The causes of action are based on primary violations

of: (1) § 10(b) and Rule 10b-5; (2) § 13(b)(2)(B); and (3)

§§ 13(a) and 13(b)(2)(A) and several relevant regulations.

22

i.   Section 10(b) and Rule 10b-5

The SEC's first claim for aiding and abetting liability against Rosenberger is under § 10(b) and Rule 10b-5.  The motion to dismiss this claim is denied.  The same conduct supporting the primary violation by Rosenberger also constitutes a primary violation by Synchronoss.  Additionally, there are sufficient allegations to show that Rosenberger acted knowingly and that her conduct substantially assisted Synchronoss's primary violation.

ii.   Section 13(b)(2)(B)

The second claim for aiding and abetting against Rosenberger is under § 13(b)(2)(B) of the Exchange Act.  The motion to dismiss this claim is denied.

Section 13(b)(2)(B) provides in pertinent part that issuers must

> devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that . . . transactions are recorded as necessary . . . to permit preparation of financial statements in accordance with generally accepted accounting principles or any other criteria applicable to such statements, and . . . to maintain accountability for assets.

15 U.S.C. § 78m(b)(2)(B).  "Reasonable assurance[]" means "such level of detail and degree of assurance as would satisfy prudent officials in the conduct of their own affairs."  Id. § 78m(b)(7).

The Complaint states a claim for aiding and abetting a violation of § 13(b)(2)(B).  First, the allegations make out a primary violation by Synchronoss.  As detailed above, during the relevant period, Synchronoss improperly recognized several million dollars in revenue with respect to various transactions. When Synchronoss restated its revenue for certain quarters in 2018, it explained that it did so in part because of "pervasive material weaknesses" in Synchronoss's internal controls for financial reporting.  As one example of these weaknesses, Synchronoss required a revenue recognition memorandum for any transaction in excess of $500,000, but for the five transactions at issue, Synchronoss's CFO approved memoranda that materially misrepresented the relevant facts of each transaction.

Second, Rosenberger substantially assisted this violation. The Complaint alleges that Rosenberger was in charge of devising and maintaining controls over financial reporting.  Moreover, Rosenberger personally signed memoranda that included material misrepresentations and omissions on these transactions.

Finally, Rosenberger acted with the requisite scienter. Rosenberger's actions suggest a course of conduct aimed at avoiding scrutiny of revenue recognition for the five transactions at issue.

                       iii. Sections 13(a) and 13(b)(2)(A) and Rules
                            12b-20, 13a-1, 13a-11, and 13a-13

The last aiding and abetting claim against Rosenberger is based on §§ 13(a) and 13(b)(2)(A), as well as various SEC rules. The motion to dismiss this claim is denied.

Section 13(a) requires companies to file annual and quarterly reports conforming to SEC regulations. 15 U.S.C. § 78m(a). Relevant SEC regulations expand on these reporting requirements. Briefly, Rule 13a-1 requires companies to file annual reports, Rule 13a-13 requires companies to file quarterly reports, and Rule 13a-11 requires companies to file current reports. 17 C.F.R. §§ 240.13a-1; 240.13a-11; 240.13-13. Rule 12b-20 requires that

> [i]n addition to the information expressly required to be included in a statement or report, there shall be added such further material information, if any, as may be necessary to make the required statements, in the light of the circumstances under which they are made, not misleading.

Id. § 240.12b-20. Finally, § 13(b)(2)(A) requires companies to "make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets" of the company. 15 U.S.C. § 78m(b)(2)(A).

Again, the Complaint states a claim under these provisions. As with the other claims discussed above, Synchronoss filed

misleading and inaccurate annual reports.  It did so with the
substantial assistance of Rosenberger, who acted with the
requisite scienter.

> 7.  SOX Section 304

The last claim asserted against Rosenberger is a violation
of § 304 of the Sarbanes-Oxley Act ("SOX").  The motion to
dismiss this claim is denied.

Section 304 of SOX provides:

> If an issuer is required to prepare an accounting
> restatement due to the material noncompliance of the
> issuer, as a result of misconduct, with any financial
> reporting requirement under the securities laws, the
> chief executive officer and chief financial officer of
> the issuer shall reimburse the issuer for --
>
> (1) any bonus or other incentive-based or equity-based
> compensation received by that person from the issuer
> during the 12-month period following the first public
> issuance or filing with the Commission (whichever
> first occurs) of the financial document embodying such
> financial reporting requirement; and
>
> (2) any profits realized from the sale of securities
> of the issuer during that 12-month period.

Id. § 7243(a) (emphases added).  While "misconduct" is required
to seek disgorgement under SOX § 304, the SEC may "seek
disgorgement from CEOs and CFOs even if the triggering
restatement did not result from misconduct on the part of those
officers."  SEC v. Jensen, 835 F.3d 1100, 1116 (9th Cir. 2016).

Here, Synchronoss was required to restate its financial
statements for several quarters, which was due in part to its

prior misconduct and failure to comply with reporting requirements.  Additionally, the Complaint identifies the relevant filings that contained the inaccurate statements and the date on which each was filed.  Finally, Rosenberger served as Synchronoss's CFO when the relevant statements were filed.  Thus, the SEC has stated a claim against her under SOX § 304.

Rosenberger argues that the misconduct that is a precondition to § 304 liability must be "intentional misconduct."  It is unnecessary to decide the precise type of wrongdoing required by § 304 to constitute misconduct since the Complaint amply alleges intentional misconduct by Synchronoss management in prematurely recognizing revenue.

C.   Lanni

The Complaint asserts three claims against Lanni based on her role in the Windstream transaction -- violation of § 13(b)(5); violation of Rule 13b2-1; and aiding and abetting Synchronoss's violation of §§ 13(a) and 13(b)(2)(A), as well as Rules 12b-20, 13a-1, 13a-11, and 13a-13.  The elements for each of these claims has been set forth above.  For the following reasons, Lanni's motion to dismiss is denied.

1.   Section 13(b)(5)

The motion to dismiss the § 13(b)(5) claim is denied.  The Complaint states that in 2016, Synchronoss persuaded Windstream

27

to break up a pre-existing arrangement into multiple agreements. It also plausibly pleads that Lanni understood the structure of this deal and that the multiple agreements would be negotiated simultaneously.  Nonetheless, the revenue recognition memorandum to the auditor that Lanni signed and approved for the PLA failed to explain why the PLA was not part of an MEA and did not even mention the other agreements involved in the transaction.  Thus, based on these allegations, the SEC has stated a claim against Lanni under § 13(b)(5).

Lanni's arguments to the contrary are unpersuasive.  Lanni first argues that the SEC has failed to identify specific controls she circumvented or specific books or records she falsified.  Not so.  The allegations make clear that the relevant control that was circumvented is the internal rule on providing revenue recognition memoranda for certain transactions.  The relevant book or record that was falsified is the revenue recognition memorandum for the Windstream transaction.

Lanni also argues that the Complaint does not contain sufficient allegations of Lanni's scienter.  This argument fails.  Although Lanni may be able to present a compelling narrative later in the litigation to demonstrate that she lacked

the requisite scienter, at this stage, the SEC's allegations are sufficient.

Lanni similarly contends that she could not have knowingly falsified any records or circumvented any internal controls because the accounting decisions at issue are complex and require professional judgment.  Again, Lanni may later be able to construct a compelling narrative explaining how she determined that the PLA should be considered separately from the audit services agreement and other agreements.  Reviewing only the allegations and the materials appropriately considered at this stage, however, the SEC has stated a claim.

        2.    Rule 13b2-1

Because the allegations are sufficient to make out a claim against Lanni under § 13(b)(5), they are also sufficient to make out a claim under Rule 13b2-1.  Lanni contends, however, that there are inadequate allegations to show that her conduct was unreasonable.  Assuming a reasonableness requirement exists, the Complaint's allegations plausibly plead that Lanni's conduct was unreasonable.  It alleges that Lanni knew that the PLA and the audit services agreement were negotiated simultaneously.  Since Lanni, an experienced accountant and the company's Controller, allegedly turned a blind eye to this fact despite its

implications for revenue recognition, her conduct is
sufficiently unreasonable to make out a claim.

> 3.  Aiding and Abetting Violation of §§ 13(a) and
>     13(b)(2)(A) and Rules 12b-20, 13a-1, 13a-11, and
>     13a-13

Finally, the SEC has stated a claim for aiding and abetting
against Lanni.  As noted above, the SEC has stated a primary
violation by Synchronoss.  Additionally, the SEC has plausibly
alleged that Lanni knew of at least some of the facts
constituting this violation because she allegedly knew that
revenue recognition for the PLA was improper since it was part
of an MEA.  Finally, by signing the revenue recognition
memorandum, Lanni substantially assisted the primary violation.
The memorandum was an internal requirement for Synchronoss to
recognize revenue on the transaction, and Lanni allegedly knew
it would be provided to the auditor in connection with its
review of Synchronoss's financial statements.

## Conclusion

The SEC's October 28, 2022 motion to strike is granted.
Rosenberger's September 22 motion to dismiss and Lanni's

September 23 motion to dismiss are denied.

Dated:      New York, New York
            February 10, 2023


                                    _____
                                           DENISE COTE
                                    United States District Judge